**U.S. Department of Justice**
Bureau of Alcohol, Tobacco, Firearms and Explosives

**Final Notice of Denial of Application, Revocation Suspension and/or Fine of Firearms License**

In the matter of:

☐ The application for license as a/an _____, filed by:

or

☑ License Number 3-45-015-01-3K-01370 & 3-45-015-06-3K-01371 _____ as a/an

Dealer of Firearms Other than Destructive Devices & Manufacture of Ammunition _____, issued to:

Name and Address of Applicant or Licensee *(Show number, street, city, state and Zip Code)*
BISMANGUNS, LLC.
2908 Morrison Ave, Unit 4, Bismarck, North Dakota 58504

---

Notice is Hereby Given That:

☐ A request for hearing pursuant to 18 U.S.C. § 923(f)(2) and/or 922(t)(5) was not timely filed. Based on the findings set forth in the attached document, your

☐ license described above is revoked pursuant to 18 U.S.C., 923(e), 922(t)(5) or 924(p), effective:

☐ 15 calendar days after receipt of this notice, or ☐ _____,

☐ license is suspended for _____ calendar days, effective _____, pursuant to 18 U.S.C. § 922(t)(5) or 924(p).

☐ licensee is fined $ _____, payment due: _____, pursuant to 18 U.S.C. § 922(t)(5) or 924(p).

☑ After due consideration following a hearing held pursuant to 18 U.S.C. § 923(f)(2) and/or 922(t)(5), and on the basis of findings set out in the attached copy of the findings and conclusions, the Director or his/her designee concludes that your

☐ application for license described above is denied, pursuant to 18 U.S.C., 923(d).

☐ application for renewal of license described above is denied pursuant to 18 U.S.C. 923(d), effective:

☐ 15 calendar days after receipt of this notice, or ☐ _____

☑ license described above is revoked pursuant to 18 U.S.C., 923(e), 922(t)(5) or 924(p), effective:

☑ 15 calendar days after receipt of this notice, or ☐ _____

☐ license is suspended for _____ calendar days, effective _____, pursuant to 18 U.S.C. § 922(t)(5) or 924(p).

☐ licensee is fined $ _____, payment due: _____, pursuant to 18 U.S.C. § 922(t)(5) or 924(p).

If, after the hearing and receipt of these findings, you are dissatisfied with this action you may, within 60 days after receipt of this notice, file a petition pursuant 18 U.S.C. § 923(f)(3), for judicial review with the U.S. District Court for the district in which you reside or have your principal place of business. If you intend to continue operations after the effective date of this action while you pursue filing for judicial review or otherwise, you must request a stay of the action from the Director of Industry Operations (DIO), Bureau of Alcohol, Tobacco, Firearms and Explosives, at 30 7th Street East, Suite 1900, St. Paul, MN 55101 _____,
prior to the effective date of the action set forth above. You may not continue licensed operations unless and until a stay is granted by the DIO.

Records prescribed under 27 CFR Part 478 for the license described above shall either be delivered to ATF within 30 days of the date the business is required to be discontinued or shall be documented to reflect delivery to a successor. See 18 U.S.C. 923(g)(4) and 27 CFR § 478.127.

After the effective date of a license denial of renewal, revocation, or suspension, you may not lawfully engage in the business of dealing in firearms. Any disposition of your firearms business inventory must comply with all applicable laws and regulations. Your local ATF office is able to assist you in understanding and implementing the options available to lawfully dispose of your firearms business inventory.

*Exhibit 2*
*Ruff v ATF*

ATF Form 5300.13
Revised September 2014

| Date | Name and Title of Bureau of Alcohol, Tobacco, Firearms and Explosives Official | Signature |
|---|---|---|
| 01/03/2023 | Hans C. Hummel, Director, Industry Operations | *H.Hummel* Digitally signed by HANS HUMMEL Date: 2023.01.03 08:02:42 -06'00' |

I certify that, on the date below, I served the above notice on the person identified below by:

[✓] Certified mail to the address shown below. Tracking Number: 7017 0530 0000 8557 7911    **Or**    [ ] Delivering a copy of the notice to the address shown below.

| Date Notice Served | Title of Person Serving Notice | Signature of Person Serving Notice |
|---|---|---|
| 01/03/2023 | Executive Assistant | *signature* |

| Print Name and Title of Person Served | Signature of Person Served |
|---|---|
| Bismanguns LLC. | |

Address Where Notice Served
2908 Morrison Ave, Unit 4, Bismarck, North Dakota 58504

Note: Previous Edition is Obsolete

ATF Form 5300.13
Revised September 2014

Bismanguns, LLC
2908 Morrison Avenue, Unit 4
Bismarck, North Dakota
FFLs # 3-45-015-01-3K-01370
3-45-015-06-3K-01371

Bismanguns, LLC (Licensee) holds two Federal firearms licenses listed above issued by the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) pursuant to the Gun Control Act of 1968 (GCA), as amended, 18 U.S.C. Chapter 44, and the regulations issued thereunder, 27 C.F.R. Part 478.

In February 2022, ATF initiated compliance inspections at Licensee's premises. As a result of the inspections, on August 22, 2022, ATF issued a Notice to Revoke or Suspend License and/or Impose a Civil Fine, ATF Form 4500, to Licensee Bismanguns, LLC. By letter dated August 29, 2022, Licensee, through responsible person Bret Ruff, timely requested a hearing to review that Notice. The hearing was conducted on October 4, 2022.

The hearing was held at the ATF Fargo Field Office 657 2nd Avenue, Fargo, North Dakota. The hearing was conducted by ATF Director, Industry Operations (DIO) Hans Hummel. ATF was represented by ATF Attorney Theresa Hummel. ATF Industry Operations Investigators (IOIs) Jacob Temp and Joann Symington appeared as witnesses on behalf of ATF. Licensee was represented by Bret Ruff.[1] The hearing was recorded and transcribed by ATF through a court reporter service. Both sides offered testimony and exhibits. The testimony and exhibits introduced at the hearing constitute the record in this proceeding.

It is noted that two Notices to Revoke were issued by ATF simultaneously: one to Bismanguns, LLC and a second to Bret Ruff, sole proprietor. The hearing on October 4, 2022, and the record created addressed both Notices. This Final Notice issued to Bismanguns, LLC is based upon the entirety of the record. References to "Licensee" refer to Bismanguns LLC, holder of Federal firearms licenses 3-45-015-01-3K-01370 and 3-45-015-06-3K-01371.

**Findings of Fact**

There were seven violations cited in the Notice issued to Bismanguns, LLC. Having reviewed the record in this proceeding, I make the following findings:

I find the following facts relevant to Violation #1 & #2:

On 23 occasions, Licensee willfully failed to timely and/or accurately record the acquisition of firearms, in violation of 18 U.S.C. § 923(g)(1)(A) and 27 C.F.R. § 478.125(e).

---

[1] Mr. Bret Ruff is the owner and sole responsible person for three licenses, therefore willful violations occurring under any one license are attributable to him and the other licenses pursuant to 18 U.S.C. § 923(e). However, hearing testimony resulted in factual distinctions between the corporate license (Bismanguns) and the individual license (Ruff). Therefore, the findings and conclusions as to Ruff in his individual capacity will be issued in a separate document but are fully incorporated herein.

On 83 occasions, Licensee willfully failed to timely and/or accurately record the disposition of firearms, in violation of 18 U.S.C. § 923(g)(1)(A) and 27 C.F.R. § 478.125(e).

Licensee admitted that the violations occurred, and dates entered in the Acquisition and Disposition (A&D) record were not the actual dates of acquisition, sale or disposition. Licensee did; however, argue that violations were not committed willfully.

Licensee's conduct after the initiation of the inspection contributed to my conclusion that this licensee lacks credibility while displaying a concerning disregard for the law. First, soon after ATF arrived on site, Licensee recognized that the A&D records contained errors and began an un-authorized, mid-inspection, independent audit and modification of records that took place while IOIs were not present on the premise. Licensee's attempt to fix errors created more errors, including an inaccurate Theft Loss report. Licensee's efforts also hindered the actual inspection.[2] Second, Licensee submitted two written explanations to ATF at the conclusion of the inspection. (ATF Ex. 6 & 7). In those letters, Licensee indicated that recordkeeping responsibilities had been designated to other family members and Mr. Ruff was not aware of the lack of compliance, shirking his responsibility as the sole responsible person on the licenses. Third, at the hearing, Licensee blamed the computer system for inaccurate dates due to an auto-populate feature; however, Licensee later amended this after determining that the system did allow for back dating, further eroding its credibility. Finally, at the hearing, Licensee offered a fourth explanation to suggest that it understood the date of "disposition" to mean the date the firearm's status was amended in the record, versus the date of physical transfer, which explained the inconsistent dates between the Forms 4473 (containing the actual date the transferee acquired the firearm) and the A&D record (containing a subsequent date when the A&D record was updated). This late claim of a misunderstanding of a fundamental requirement was not persuasive and is certainly not an accurate reflection of the law. See 27 C.F.R. § 478.125(e): "The record shall show the date of sale or disposition of each firearm, the name and address...".

Although Licensee had not been inspected before the February 2022 inspections, its responsible person, Bret Ruff, had participated in three qualification inspections: 2013, 2015 and 2020. Further Licensee was contacted by ATF during the pandemic, to ensure information and assistance was available to him. This direct contact with ATF was in addition to the large stack of ATF reference materials that Licensee brought to the hearing thus demonstrating that such information was clearly at its disposal. Finally, each of the Acknowledgements of Regulations signed by Licensee (ATF Ex. 8 & 9) states that regulations were explained and "I understand that this is only an overview of the regulations and that I will be responsible for familiarizing myself with all of the laws and regulations..." Therefore, there is evidence that Licensee had opportunity to be educated and direct access to the regulatory requirements.

---

[2] The inspection started on February 1, 2022, at which time IOI Temp requested A&D records and Forms 4473. The copy of the A&D record was made available to IOI Temp on February 14, 2022. IOI Temp was on site February 2, 3 and 4 without being provided a printed copy of the A&D Record. Licensee stated that it conducted its own inventory on February 5, 2022, using the A&D Record and making entries in that A&D Record to reflect 49 missing firearms which was ultimately determined to be 14 missing firearms and 35 failures to document disposition information.

Based upon these facts, I find that these violations occurred, and Licensee's conduct was willful. Licensee had knowledge of the A&D requirements of 27 C.F.R. 478.125(e) but was plainly indifferent to them. Licensee's efforts to prevent ATF from conducting an accurate compliance inspection and to "fix" errors mid-inspection only contribute to the weight of evidence that Licensee was plainly indifferent to legal obligations until faced with the consequences at which point it went to great lengths to prevent ATF from citing the violations.

I find the following facts relevant to Violation #3:

On two occasions, Licensee willfully transferred a firearm to an unlicensed person without first contacting the National Instant Criminal Background Check System ("NICS") and obtaining a unique identification number before allowing the transfer, in violation of 18 U.S.C. § 922(t) and 27 C.F.R. § 478.102.

The first instance involved a transfer to P. Strom. Three firearms were transferred to her without a Form 4473 or NICS check. Licensee admitted to the facts underlying this transfer and only disputed whether the violation was committed willfully. ATF Exhibit 13 & 39 documented the follow up efforts to have Ms. Strom return to the licensed premises, complete a background check and Form 4473. License argued that the violation was not willful because it understood the arrangement to be one of "off-site storage" as opposed to a transfer to a non-licensee. Licensee claims to have believed he could "store" the firearms at the AMVETs club, leave them in the custody of persons that were not employees or agents of the LLC, with full access to the firearms, and then when the firearm was raffled off, the winner would return to Licensee to effectuate that transfer.

I find Licensee's explanation lacks credibility. These firearms were clearly disposed of to a non-licensee, out of Licensee's actual or constructive control, without any record of the firearms' whereabouts. In fact, Licensee initially reported these firearms as missing since it had no record of their whereabout which invalidates the off-site storage argument. The NICS system and Forms 4473 are intended to ensure that firearm transfers to lawful purchasers are fully documented. Licensee was aware of the requirements to conduct NICS checks for non-licensees as evidenced by other transfers and the Acknowledgments of Regulations. Licensee was plainly indifferent to this legal obligation by allowing firearms to leave the premises with a non-licensee for an unknown amount of time with no record of the person or their prohibited status. I find that this violation occurred, and Licensee's conduct was willful.

The second instance involved a transfer to B. Peterson in which the NICS check was conducted more than 30 days before the transfer of the firearm. I make no finding as to the willfulness of this violation thus it will not be relied upon in my decision.

I find the following facts relevant to Violation #4:

On 15 occasions, Licensee willfully failed to timely and/or accurately report the sale or other disposition of two or more pistols and/or revolvers during any five consecutive business days to an unlicensed person, in violation of 18 U.S.C. § 923(g)(3)(A) and 27 C.F.R. § 478.126a.

Licensee admitted that it had "lost track of the procedure" and had not filed any multiple sale reports since 2018. This admission demonstrated knowledge and plain difference. I find that this violation occurred, and Licensee's conduct was willful.

I find the following facts relevant to Violation #5:

On six occasions, Licensee willfully made a false entry in, failed to make appropriate entry in, or failed to properly maintain any record of receipt sale or other disposition as required by the GCA, in violation of 18 U.S.C. § 922(m) and 27 C.F.R. § 478.121(c). In the alternative, Licensee willfully failed to sign and/or date the Firearms Transaction Record, ATF Form 4473 certifying that Licensee does not know or have reason to believe the transferee is disqualified by law from receiving the firearm described on the Form, in violation of 18 U.S.C. § 923(g)(1)(A) and 27 C.F.R. § 478.124(c)(5).

ATF presented evidence of six Forms 4473s with misrepresentations in the transferor signature section of the Form. As was previously noted, Licensee took the liberty to amend records after the initiation of the inspection in an attempt to "fix errors."[3] One such error was the discrepancy between the certification date by Licensee and the certification date by the transferee. Based upon testimony, it appears as though on five occasions, Licensee did not certify the Form at the time of transfer as required by 27 C.F.R. § 478.124(c)(5). Instead, an employee who was in charge of recordkeeping signed the Forms at some later date. This signature by the recordkeeper was in violation of the 27 C.F.R. § 478.121 as it did not represent a certification at the time of transfer. Licensee compounded this violation when, on February 1, 2022 (the night after the inspection began), Licensee had an employee who was on duty the date of the actual transfer, white-out the recordkeeper's existing signature, re-sign and date so as to match the date of the transferee's certification. The newly revised information is blatantly false. For example, a person signing the Form 4473 in February 2022 could not possibly be certifying to the lawfulness of transfers that already took place in August of 2021. A sixth Form was also changed (with pen but no white-out) with dates that were not appropriate entries, evidencing a transfer that occurred in 2021 with a NICS check in 2022.

Licensee admitted to the failure to sign the Forms 4473 and the impossibility of certifying a transfer that took place six months before. Licensee asserted it was trying to "get stuff right" when it changed and re-signed Forms 4473 although the ultimate goal appeared to be avoiding citations and covering up non-compliant records. Licensee demonstrated knowledge of the requirements to properly sign and date forms by its own efforts to "fix" things after the fact and by the proper completion of other forms. I impute to Licensee the knowledge that inappropriate and false information on required records is in violation of regulatory requirements because truthful and accurate records is at the very core of the firearms regulatory scheme. Furthermore, Licensee's certification is the final protection against unlawful firearms transfers. I find that this violation occurred, and Licensee's conduct was willful.

I find the following facts relevant to Violation #6:

---

[3] After IOIs left the premises on the first day of the inspection, Licensee and employees used white-out to make changes to Forms 4473s. Upon arrival the next day, IOIs told Licensee to stop making changes and explained there is a procedure for amending errors on Forms.

On one occasion, Licensee willfully sold or otherwise disposed of a firearm to an unlicensed person without recording the transaction on a Firearms Transaction Record, ATF Form 4473, in violation of 18 U.S.C. §§ 922(b)(5); 923(g)(1)(A) and 27 C.F.R. § 478.124(a).

This violation related to same transfer as mentioned in Violation #3 to P. Strom. That transfer occurred without a NICS check and without a Form 4473. Based upon the facts mentioned above, Licensee's admission that a Form was not completed and the completion of a Form after the fact (ATF Ex. 39), I find that the violation occurred. I find Licensee had knowledge of the legal requirement to obtain a completed Form 4473 when transferring firearms to a non-licensee and was plainly indifferent to that legal obligation. Licensee allowed firearms to leave the premises with a non-licensee for an unknown amount of time with no record of the person or their prohibited status. I find Licensee's conduct was willful.

I find the following facts relevant to Violation #7:

On 31 occasions, Licensee willfully failed to obtain/execute the Firearms Transaction Record, ATF Form 4473 as indicated by the headings on the Form and the instructions on or pertaining to the Form, in violation of 18 U.S.C. § 922(m) and 27 C.F.R. § 478.21(a).

ATF presented a representative sample of the 31 Forms 4473 that demonstrated the failure to complete the Form 4473 consistent with instructions. Approximately 30% of the total number of Forms 4473 reviewed had similar errors. Licensee did not dispute the findings but did question the total number of Forms 4473 completed in a one-year period. Licensee argued that errors were not willful. However, this argument is not persuasive as Licensee, in other instances, demonstrated knowledge of the requirements to correctly complete a Form 4473. Licensee's excuse of carelessness does not negate willfulness. Rather, I find that to be an admission of plain indifference. I find that this violation occurred, and Licensee's conduct was willful.

**Conclusions of Law**

Pursuant to the GCA, ATF may, after notice and opportunity for hearing, revoke a Federal firearms license if the licensee has willfully violated any provision of the GCA or the regulations issued thereunder. 18 U.S.C. § 923(e); 27 C.F.R. § 478.73.

For the government to prove a willful violation of the federal firearms statutes, it need only establish that a licensee knew of its legal obligation and "purposefully disregarded or was plainly indifferent to the record-keeping requirements." Lewin v. Blumenthal, 590 F. 2d 268, 269 (8th Cir. 1979). The government is not required to show that the violations occurred with any bad purpose. On Target Sporting Goods v. Attorney General of U.S., 472 F. 3d 572, 575 (8th Cir. 2007). Licensee has participated in three qualification inspections with ATF and has not previously participated in a compliance inspection. However, the lack of a previous compliance inspections or repeat violations does not preclude ATF from taking action and finding willfulness. Repeat violations can support a revocation action, however "it is clear that a licensee may be found to have willfully violated the Gun Control Act even if he has never previously been cited for violations." See e.g., Nat'l Lending Group v. Mukasey, 2008 WL 5329888, at *8

n. 13 (D. Az. Dec. 19, 2008) (no requirement that there have been prior warnings to establish willfulness); Manuele v. Acting Director, ATF, 2008 WL 2168761, at *5 (C.D. Ill May 22, 2008); Francis v. ATF, 2006 WL 1047026, at *4 (E.D. Okla. Apr.20, 2006). Courts have consistently held that compliance with the GCA is the licensee's responsibility. A federal firearms licensee ... "[has] a duty to be cognizant of the rules and regulations issued by the Bureau of Alcohol, Tobacco, and Firearms and to follow those mandates." Trader Vic's Ltd. V. O'Neill, 169 F.Supp.2d 957, 965 (N.D.Ind.2001). Therefore, a lack of repeat violations does not negate willful misconduct.

As stated above, there were facts supporting willfulness in each of the violations, specifically that Licensee was *indifferent* to its legal obligation. "Indifference" is defined by the Merriam-Webster Dictionary and case law as lack of interest, enthusiasm, or concern for something. American Arms International v. Herbert, 563 F.3d 78 (4th Cir. 2009). The record demonstrates that Licensee was unconcerned with accurate record keeping, understanding the law, filing multiple handgun sales reports and ensuring a background check was done. Only when ATF arrived did Licensee became concerned. So much so, that the A&D record was not made available, and the Forms were improperly modified. Licensee admitted to the IOIs that changes to the Forms, as evidenced by the white-out on the Forms 4473, were made the night before. However, this admission does not mitigate the underlying attempts to interfere with the inspection, hinder reconciliation of inventory and avoid being cited for non-compliant records. Licensee's sudden "concern" and active efforts to modify information on required records highlights the extreme lack of attention to its responsibility as an FFL prior to ATF's arrival.

Courts have supported the revocation of a Federal firearms license based upon the quality of the violation, not the quantity. "A single willful violation of the GCA is enough to deny a federal firearms license application or revoke a federal firearms dealer's license." Shaffer v. Holder, No. 1:09-0030, 2010 WL 1408829, at *10 (M.D. Tenn. Mar. 30, 2010) (citing Appalachian Resources Dev. Corp. v. McCabe, 387 F.3d 461, 464 (6th Cir.2004).) See also, Fairmont Cash v. James, 858 F.3d 356 (5th Cir. 2017). In this case, ATF has presented evidence of several types of willful violations that directly impact public safety, including failure to complete multiple handgun sales reports, missing firearms disposition information and a blatant transfer of firearms without a Form 4473 or a NICS check. Therefore, there is both quantity and quality of willful violations in this record.

Arguing that errors were the result of human mistakes or harmless misunderstandings of clearly documented regulatory requirements does not negate a finding of willfulness. "The recordkeeping requirements imposed by the GCA are, by their very nature, highly technical. Compliance therefore requires extreme vigilance." Garner v. Lambert, 558 F.Supp.2d 794, 804 (N.D. Ohio 2008). "When the Act was enacted, Congress was concerned with the widespread traffic in firearms and with their general availability to those whose possession thereof was contrary to the public interest." Fin & Feather Sport Shop, Inc. v. U.S. Treasury Dept., 481 F.Supp. 800 (Neb. 1979). Therefore, regulatory requirements are critical to the overall regulation of the firearms industry, and indifference to those requirements can result in revocation.

For the reasons stated above, I conclude that Licensee willfully violated law and regulations set forth in the Notice of Revocation of License.

The Finding and Conclusions set forth in the Final Notice of Revocation issued to Bret Ruff, FFL # 3-45-043-01-5B-00988 are fully incorporated herein, due to Bret Ruff's status as sole responsible person and owner of Bismanguns, LLC and the sole proprietor license.

Accordingly, as provided by 18 U.S.C. § 923(e) and 27 C.F.R. § 478.73, the Federal firearms licenses held by Bismangun, LLC are hereby REVOKED.



U.S. Department of Justice

Bureau of Alcohol, Tobacco,
Firearms and Explosives

*Washington DC*

www.atf.gov

## IMPORTANT NOTICE

### Selling Firearms AFTER Revocation, Expiration, or Surrender of an FFL

Former Federal Firearms licensees (FFLs) who continue to sell firearms after the revocation, expiration, or surrender of their license are subject to the same rules as persons who have never been licensed in determining whether they are "engaged in the business" of selling firearms without a license in violation of 18 U.S.C. § 922(a)(l)(A). Accordingly, former licensees who wish to dispose of any remaining business inventory must adhere to the following guidance:

Business inventory must be disposed of by the former FFL in a manner that, objectively, does not constitute being engaged in the business of dealing in firearms using the same facts and circumstances test that would apply to persons who have never been licensed.

The preferred manner of disposition is for the former licensee to:

- Arrange for another FFL to purchase the business inventory (and other assets) of the business; or
- Consign the inventory to another FFL to sell on consignment, or at auction.

Should a former FFL decide against those options, he/she should be aware that future sales - whether from his/her personal firearms collection or otherwise - will be evaluated for a potential violation of 18 U.S.C. § 922(a)(l)(A), just as would occur with a person who had never been licensed.

If a former FFL is disposing of business inventory, the fact that no purchases are made after the date of license revocation, expiration, or surrender does not immunize him/her from potential violations of 18 U.S.C. § 922(a)(l)(A). Instead, business inventory acquired through repetitive purchases while licensed are attributed to the former FFL when evaluating whether subsequent sales constitute engaging in the business of dealing in firearms without a license.

ATF remains committed to assisting former licensees in complying with Federal firearms laws. If you have questions, please contact your local ATF office.

CURTIS GILBERT
Digitally signed by CURTIS GILBERT
Date: 2022.04.04 16:12:22 -04'00'

Curtis Gilbert
Deputy Assistant Director (Industry Operations)
Field Operations